## BOWLES v. UNITED STATES.
### No. 2999.

Circuit Court of Appeals, Fourth Circuit.

Oct. 21, 1930.

NORTHCOTT, Circuit Judge, dissenting.

John Philip Hill, of Baltimore, Md., for appellant.

A. W. W. Woodcock, U. S. Atty., and William C. Baxter, Asst. U. S. Atty., both of Baltimore, Md., for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and WATKINS, District Judge.

PARKER, Circuit Judge.

This is an appeal from an order adjudging one Norman S. Bowles in contempt of court and sentencing him to serve a term of seventy-five days in jail as punishment therefor. The charges against him are that he disobeyed an order directing him to appear for hearing that his conduct in a case heard before the court might be investigated, and that he practiced a deception upon the court, and was thereby allowed to appear at its bar, by representing that he was a practicing attorney of the District of Columbia, whereas the fact was that he had been disbarred. The following is a statement of the facts with regard to Bowles' conduct in court and his refusal to appear pursuant to the court's order contained in a statement filed by the District. Judge as a part of the record, viz.:

"On the morning of November 26th, 1929, Norman S. Bowles appeared in the United States District Court at Baltimore, and representing himself as an attorney of the District of Columbia Bar, answered the call of the criminal docket on behalf of one Thomas Knott, informed against for violation of the National Prohibition Act [27 USCA]. Bowles plead Knott 'guilty' and Knott was fined $200.00 and costs.

"Following the disposition of this case, Bowles was interrogated by the Court, while still in session, in the course of which he made certain statements tending to show that he had been paid by a third party to defend the said Knott and to misrepresent the said Knott's connection with the offense with

which he was charged, to the end that both the said third party and the said Knott might escape punishment for the offense. Because of these statements, the Court thereupon stated to Bowles that his conduct prima facie required further investigation, and asked Bowles for his full name and address, which were given as Norman S. Bowles, 1117 Vermont Avenue, Washington, D. C., and Bowles stated that he was an attorney at law. practising in the city of Washington. Throughout the proceedings before this Court and the questioning of Bowles after said proceedings as aforesaid, Bowles made no denial, either express or implied, that he was an attorney of the District of Columbia as he had originally represented himself to be.

"Before the commencement of the afternoon session of the Court on the same day, namely, November 26th, Bowles came to the Court's chambers, asked if the Court wanted to see him further, whereupon the Court ordered him to appear before the Court at 4:00 P. M. that day for a further hearing. He failed to appear.

"On the following day, namely, November 27th, the Court learned, upon inquiry from the Bar Association of the District of Columbia, that Bowles had been disbarred by the Supreme Court of the District of Columbia on July 2nd, 1921, and expelled as a member of the Bar of the Supreme Court of the District of Columbia, and that on June 14th, 1929 he had been cited in contempt of that Court for having held himself out as an attorney at law in Washington, D. C., after having been disbarred as aforesaid, that he was adjudicated in contempt and ordered to pay a fine of $100.00, from which he appealed and was released on bond pending the appeal, which is still undecided. This Court was further informed that the disbarment was the result of Bowles' having been convicted in the Supreme Court of the District, on June 24th, 1921, of violation of section 37 of the Penal Code [18 USCA § 88], sentenced to pay a fine of $5000.00 and to the Atlanta penitentiary for a period of two years.

"The Court obtained certified copies from the Clerk of the Supreme Court of the District of Columbia, of the docket entries showing the above facts to be true.

"As a result of the aforegoing information, the Court on November 27th, 1929, ordered Bowles to appear before the Court on the following Monday, December 2nd, at 10:30 A. M. and to show cause, if any be had, why he failed to obey the original order of Court above referred to, to appear for further hearing at 4:00 P. M. on November 26th. This order was served upon Bowles by registered mail letter and was received by his agent on November 29th, as evidenced by Post Office registered mail return receipt. Upon Bowles' failure to appear on Monday, December 2nd, as ordered, the Court on December 3rd, 1929, issued a bench warrant for his arrest and production before the Court to answer for being in contempt of Court in having practiced upon the Court the aforegoing fraud and deception respecting his status as an attorney, all having been done while actually in the presence of the Court, and for having disobeyed two previous orders of the Court as above set forth."

The bench warrant referred to by the judge was issued pursuant to an order entered on December 3d, in the absence of respondent, adjudging him in contempt. That order is as follows:

"Whereas on the twenty-seventh day of November, 1929, Norman S. Bowles, never a member of the Bar of this Court, appeared before this Court and represented himself as an attorney at law residing in Washington, D. C., and as such attorney being presumably in good standing there; and

"Whereas as a result of the aforegoing the said Norman S. Bowles was permitted to represent a client, to-wit, Thomas Knott, informed against for violation of the National Prohibition Act and who, while so represented by the said Norman S. Bowles, plead guilty and was fined Two Hundred Dollars ($200.00) and costs; and

"Whereas following the disposition of the case of the said Thomas Knott as aforesaid, the said Norman S. Bowles was interrogated by the Court, in the course of which he made statements to the Court tending to show that he had been bribed by a third party to defend the said Knott and to misrepresent the said Knott's connection with the offense with which he was charged, to the end that both the said third party and the said Knott might escape punishment; and

"Whereas certain other statements made by the said Norman S. Bowles to the Court in the course of the aforesaid interrogation were in flat contradiction of statements he had made in open Court; and

"Whereas the Court has since ascertained that on July 2nd, 1921, the said Norman S. Bowles was disbarred and expelled by the Supreme Court of the District of Columbia as a member of the Bar of that Court following his conviction for a felony for which he

was fined Five Thousand Dollars ($5,000.00) and sentenced to the penitentiary for two years; and that on June 14, 1929, he was adjudicated in contempt of the said Court for having held himself out as an attorney at law in Washington, D. C. after having been disbarred as aforesaid, and for such contempt was fined One Hundred Dollars, ($100.00) and that an appeal from the order imposing said fine is now pending; and

"Whereas because of the aforegoing facts the Court ordered the said Norman S. Bowles to reappear and to explain his conduct before the Court as aforesaid, but he has failed to comply with said order;

"Now, therefore, by reason of the deception which the said Norman S. Bowles practiced upon this Court, and by reason of his other wrongful conduct as aforesaid, the said Norman S. Bowles is declared to be in contempt of this Court and it is ordered that a bench warrant issue and he be apprehended by the Marshal, and brought forthwith before this Court to answer for said contempt."

Bowles was arrested in the District of Columbia under the bench warrant and resisted removal into Maryland. He was ordered removed by the Supreme Court of the District and appealed to the Court of Appeals. While the appeal was pending, he voluntarily went into Maryland, where he was arrested and carried before the District Judge. Here he denied that he had ever seen the charges against him, or any copy of the order adjudging him in contempt, and asked that he be granted a continuance to prepare his defense. This the court denied, and, thereupon, entered an order which, after reciting that an order had been entered on December 3d adjudging him in contempt, and that the court had granted him a hearing and had found that his conduct as set forth in the original order was without justification, concluded by sentencing him to serve seventy-five days in jail.

There is nothing in the record to show that any copy of the charges was ever served upon Bowles or seen by him prior to the time that he was taken before the judge, or that he had ever before seen or heard the contents of the order of December 3d. There was a statement by the district attorney that a copy of the order was before the United States Commissioner in the District of Columbia, but this was denied by Bowles; and the record of the court of the District was not produced. The judge was evidently of opinion that the case was one which could be dealt with summarily; for in denying the continuance he said: "This being a matter of direct contempt, and punishable immediately, there seems to be no reason why the defendant should be given any further opportunity." And this was evidently the theory, also, upon which the order of December 3d was entered; for upon no other theory could an order adjudging respondent in contempt without either the service of process or his presence in court be sustained. See In re Terry, 128 U. S. 289, 9 S. Ct. 77, 32 L. Ed. 405.

But we do not think that either the failure of Bowles to appear pursuant to order or the false representation with which he was charged were contempts committed under the eye or within the view of the court which could be summarily punished. As pointed out by Mr. Justice Harlan in Matter of Savin, Petitioner, 131 U. S. 267, 277, 9 S. Ct. 699, 702, 33 L. Ed. 150, the mode of procedure is not the same in every case of contempt committed in the presence of the court. When the contempt is committed directly under the eye or within the view of the court, it may proceed "upon its own knowledge of the facts, and punish the offender, without further proof and without issue or trial in any form." Where, however, the judge cannot have personal knowledge of all the facts constituting the contempt and must be informed thereof by confession of the party, or by the testimony of others, the proper practice is by rule, or other process, to require the offender to appear and show cause why he should not be punished. And in such case, due process requires that he be advised of the charges and have reasonable opportunity to meet them by way of defense or explanation; and "this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed." Cooke v. U. S., 267 U. S. 517, 535–537, 45 S. Ct. 390, 395, 69 L. Ed. 767. See also In re Terry, supra, 128 U. S. 289, 307, 9 S. Ct. 77, 32 L. Ed. 405; 4 Bl. Com. 286.

As pointed out in the Terry and Cooke Cases, the power of the court to punish summarily for offenses committed under its eye and within its view rests upon its ability to see and hear what occurs in its presence and upon the demoralization of its authority which would inevitably follow if such contempts were not instantly suppressed and punished. Thus, in the case of an assault made in the courtroom, the judge sees the transaction with its attendant circumstances

and is in position to impose punishment without acquiring information from any other source whatever. But this was not true of the contempts charged against respondent. Neither his failure to appear nor the false representation with which he is charged disturbed the proceedings of the court or tended to demoralize its authority, and neither constituted a matter which with its attendant circumstances was under the eye or within the personal knowledge of the judge. The judge knew of the order to respondent to appear and of respondent's failure to comply with the order, but he did not know the circumstances surrounding such failure or what reason or excuse respondent may have had therefor; and he was no more justified in imposing summary punishment under such circumstances than he would have been in entering final judgment upon an appearance bond without first issuing a scire facias or other notice. He knew that respondent had represented in his presence that he was a practicing attorney of the District of Columbia, but he did not know that this statement was untrue until he learned from an outside source that he had been disbarred by the Supreme Court of the District. A contempt of this sort is analogous to false swearing, which is punishable as contempt under proceedings had under rule to show cause (In re Ulmer [D. C.] 208 F. 461), but may not be punished summarily except where the court judicially knows the evidence to be false (People v. Stone, 181 Ill. App. 475; 13 C. J. 25).

As the contempts charged were not of the class punishable summarily, the proceedings had do not meet the requirements of due process. The order of December 3d adjudging defendant in contempt was entered in his absence and without legal notice of the charges having been given him by rule, order to show cause, or other process. The order of December 3d might be treated as a rule or as an order nisi, justifying the later order imposing punishment, if respondent had been served with copy thereof or had been given opportunity to make answer to the charges therein contained; but neither of these things was done. He was brought before the court on the day of his arrest, and, although he denied ever having seen a copy of the order of December 3d or ever having heard of the charges contained therein, his request for a continuance that he might prepare and present his defense was denied. We think the proceedings had fall clearly under the condemnation of the principles laid down in the Cooke Case, supra, to which we have advert-

ed. The error of the learned judge was doubtless due, as was the error of the judge in the Cooke Case, to the erroneous conclusion that the contempts charged were of the class which may be punished summarily.

For the reasons stated, the judgment and sentence of the court below will be set aside, and the case will be remanded for further proceedings not inconsistent with this opinion.

Reversed.

NORTHCOTT, Circuit Judge (dissenting).

I do not find myself in agreement, on the admitted facts in this case, with the conclusion reached by the court.

It appears from the record that the appellant Bowles confessed to the judge below that he had been employed, or, to use a harsher term, bribed to make a false representation with respect to a criminal case then being heard by the court. Bowles had in open court made such misrepresentations. Bowles represented himself at the time as a practicing attorney and a member of the bar of the District of Columbia. The judge ordered Bowles to appear before him at 4 o'clock of the afternoon of the same day. Bowles failed to obey the order of the court and did not appear. It afterwards came to the knowledge of the court that Bowles had been convicted of a felony in the District of Columbia and sentenced to the penitentiary for two years, and fined $5,000 following which he was disbarred, and, at the time with which we are here concerned, had been adjudicated in contempt of the Supreme Court of the District for having held himself out as an attorney.

After Bowles failed to appear in response to a further order of the court below, a copy of which order was sent him by registered mail, he was arrested under a bench warrant and resisted removal into Maryland. Being ordered removed by the Supreme Court of the District, Bowles appealed the case. Pending a decision by the Court of Appeals he was caught in the state of Maryland, arrested, and brought before the judge, before whom the acts alleged to constitute contempt were committed.

On being arraigned Bowles denied that he had ever before seen or heard the contents of the order of December 3, adjudging him in contempt. This denial can have little force in the face of the statement of the United States Attorney that a copy of the order was before the United States Commissioner at the

hearing in the District of Columbia, and the admitted fact that Bowles was actually prosecuting an appeal from the order of removal. In addition to this, the charge of contempt was based solely on statements made by Bowles to the court and his action in refusing to appear in obedience to the order of the court. As to the statements made by Bowles he had within his breast the knowledge of the facts, and, as to his actions in disobeying the order of the court, he was fully advised.

A careful study of the cases of In re Terry, 128 U. S. 289, 9 S. Ct. 77, 32 L. Ed. 405; In the Matter of Savin, 131 U. S. 267, 9 S. Ct. 699, 33 L. Ed. 150; and Cooke v. U. S., 267 U. S. 517, 45 S. Ct. 390, 69 L. Ed. 767, where full discussions of this question will be found, leads me to the conclusion that the acts of Bowles shown by the record, and undisputed, constituted contempt of the class punishable summarily, that the proceedings had by the judge below were in every respect proper, and that the judgment should be affirmed.

If courts cannot summarily protect themselves from such acts as are here.shown, they are indeed impotent.